UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PARISH OF ST. CHARLES

VERSUS

HDI GLOBAL SPECIALTY SE, *et al.*

CIVIL ACTION

NO. 22-3404 c/w 22-3405,
22-3407, 22-3408, 22-3411,
22-3412, 22-3413, 22-3414,
22-3415, 22-3416, 22-3417

SECTION M (5)

*Pertains to all cases*

## <u>ORDER & REASONS</u>

Before the Court is a motion to compel arbitration and stay litigation filed by defendants Certain Underwriters at Lloyd's London, severally subscribing to Certificate No. AMR-58323-04 ("Certain Underwriters"), Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity of Arizona, United Specialty Insurance Company, Lexington Insurance Company, HDI Global Specialty SE ("HDI"), Old Republic Union Insurance Company, GeoVera Specialty Insurance Company, and Transverse Specialty Insurance Company (collectively, "Defendants").[1]  Plaintiff the Parish of St. Charles (the "Parish") responds in opposition,[2] and Defendants reply in further support of their motion.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting Defendants' motion and staying this litigation while the parties pursue arbitration.

---

[1] R. Doc. 10.
[2] R. Doc. 13.
[3] R. Doc. 17.

## I.    BACKGROUND

This case arises from an insurance coverage dispute following Hurricane Ida, which made landfall on August 29, 2021.  The Parish maintains surplus lines insurance with Defendants who jointly subscribe to the coverages, terms, and conditions set forth in the insurance policy/account no. 838669 (the "account policy").[4]   The Parish made claims with Defendants after several of its properties were damaged by the storm.[5]   On August 16, 2022, the Parish filed eleven separate suits in state court (one against each insurer) that contain nearly identical allegations seeking insurance proceeds under theories of breach of contract and detrimental reliance and asserting that the insurers acted in bad faith with respect to their joint adjustment of the loss.[6]   Each defendant removed the suit filed against it on the grounds that there is a valid arbitration agreement in the main account policy to which they all subscribe that falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, because two of the insurers – Certain Underwriters and HDI – are foreign citizens, thus giving this Court original jurisdiction pursuant to 9 U.S.C. §§ 202, 203, and 205.[7]   All eleven cases were transferred to this section of court and consolidated.[8]

The account policy to which all Defendants subscribe (*i.e.*, the governing document for each of the underlying insurance policies) contains the following arbitration clause:

---

[4] R. Doc. 10-1 at 2.

[5] *Id.*

[6] R. Docs. 1-1 at 2-7; 1-2 at 1-60.

[7] R. Doc. 1 at 1-2.  Section 203 provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States," which gives federal district courts original jurisdiction over such actions.  9 U.S.C. § 203.  Section 205 makes removable an action pending in state court that "relates to an arbitration agreement or award falling under the Convention."  *Id.* § 205.  Although the statute does not define when an action "relates to" an agreement or award falling under the Convention, "federal courts have recognized that the plain and expansive language of the removal statute embodies Congress's desire to provide the federal courts with broad jurisdiction over Convention Act cases in order to ensure reciprocal treatment of arbitration agreements by cosignatories of the Convention."  *Acosta v. Master Maint. & Constr. Inc.*, 452 F.3d 373, 376 (5th Cir. 2006).

[8] R. Doc. 9.

> All matters in difference between the Insured and the Companies … in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.
>
> ….
>
> The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.[9]

The account policy also contains a claims settlement clause providing that the amount of loss, if disputed, is to be determined in arbitration.[10]

## II.    PENDING MOTION

Defendants seek to compel arbitration and stay the litigation, arguing that, because Certain Underwriters and HDI are foreign citizens, the Convention applies and the criteria for compelling arbitration are satisfied.[11]  Defendants also argue that all of them, even the domestic insurers, are entitled to compel arbitration and the Parish is equitably estopped from objecting because it alleges interdependent and concerted conduct by all Defendants in the claims handling.[12]  Further, Defendants argue that Louisiana law does not prevent the enforcement of the arbitration clause because it cannot reverse-preempt the Convention, and besides, La. R.S. 22:868, which prohibits arbitration agreements in insurance contracts not subject to the Convention, is inapplicable to surplus lines insurance.[13]

In opposition, the Parish argues that its claims against the nine domestic insurers are not subject to the arbitration clause because each insurer issued a separate insurance policy and the Convention does not apply to domestic insurers.[14]  The Parish also argues that equitable estoppel

---

[9] R. Doc. 10-3.
[10] R. Doc. 10-4.
[11] R. Doc. 10-1 at 1-7.
[12] *Id.* at 9-20.
[13] *Id.* at 16-18.
[14] R. Doc. 13 at 1-14.  The Parish concedes that the arbitration clause is enforceable as to its claims against the foreign insurers.  *Id.* at 3.  Thus, it does not contest Defendants' motion as to Certain Underwriters and HDI.  *Id.*

should not be applied to the suits involving domestic insurers because Louisiana law preempts the arbitration clause as to those policies and "fairness" dictates that those cases should not be compelled to arbitration.[15]

Defendants reply, arguing that all of them are entitled to compel arbitration because there is a single policy document containing the arbitration clause to which they all subscribe.[16] They also argue that equitable estoppel applies all the more because La. R.S. 22:868 has been interpreted to prohibit arbitration clauses in insurance contracts.[17] Further, Defendants argue that, regardless, the domestic insurers have an independent right to compel arbitration because La. R.S. 22:868 does not apply to surplus lines insurance.[18]

## III.    LAW & ANALYSIS

There is a strong federal policy favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*, 460 U.S. 1, 24-25 (1983). The Convention is an international treaty that provides citizens of the signatory countries with the right to enforce arbitration agreements. The purpose of the Convention is "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."[19] *Sherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). The Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 201-208, codifies the Convention and provides for its enforcement in United States courts. *See id.* § 201 ("The Convention … shall be enforced in United States courts in accordance with this chapter."); *see also id.* § 206 ("A court having jurisdiction under this chapter may direct

---

[15] *Id.* at 14-24.
[16] R. Doc. 17 at 2-6.
[17] *Id.* at 6-8.
[18] *Id.* at 8-10.
[19] It is undisputed that the United States (the Parish), Germany (HDI), and the United Kingdom (Certain Underwriters) are all signatories to the Convention.

4

that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.").

"In determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004). The Fifth Circuit has held that "a court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Id.* (quotation omitted). Once these factors have been found to exist in a given case, a district court must order arbitration "unless it finds that the [arbitration] agreement is null and void, inoperative or incapable of being performed."[20] *Id.* (quotation omitted).

It is undisputed that factors one, two, and three are satisfied. The account policy contains a written arbitration agreement that provides for arbitration in the United States and arises out of a commercial insurance policy. The Parish does not dispute that Certain Underwriters and HDI are not American citizens and, consequently, does not contest that it is bound to arbitrate its claims against them.[21] Rather, the Parish argues that its claims against the nine domestic insurers are not subject to the arbitration agreement because they are based on separate insurance contracts, which do not fall under the Convention, and equitable estoppel should not apply.[22]

The insurance at issue is surplus lines coverage to which the Defendants subscribe at various levels of participation.[23] Each insurer receives a portion of the premium in accordance

---

[20] The Parish does not raise any of these defenses to arbitration. *See* R. Doc. 13.
[21] *Id.* at 3.
[22] *Id.* at 4-24.
[23] R. Doc. 10-2 at 7.

with its portion of the risk.[24]   The contract allocation endorsement provides that the policy document "shall be constructed as a separate contract between the [Parish] and each of the [insurers]," and that the evidence of coverage consists of "separate policies issued by the [insurers]."[25]  It also states that "[t]he liability of each separate contract listed and for each [insurer] represented thereby for any loss or losses of amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any [insurer] pursuant to this contract."[26]

In *Port Cargo Service, LLC v. Certain Underwriters at Lloyd's London*, 2018 WL 4042874, at *3 (E.D. La. Aug. 24, 2018), the court, considering this same policy language, held that the insured had separate insurance contracts with each of the insurers.  Applying these same principles to another similar policy, the court in *City of Kenner v. Certain Underwriters at Lloyd's, London*, 2022 WL 307295, at *2 (E.D. La. Feb. 2, 2022) ("*City of Kenner I*"), held that the arbitration clause in the overarching policy document should be read as between the insured and each insurer, separately, meaning that, on the surface, only the foreign insurers could avail themselves of the arbitration clause pursuant to the Convention.[27]  *See also City of Kenner v. Certain Underwriters at Lloyd's London*, 2022 WL 16961130, at *3 (E.D. La. Nov. 16, 2022) ("*City of Kenner II*") (holding as to an account policy identical to the one in *City of Kenner I* "that each individual policy that comprised the account policy was its own contract between plaintiff and the respective defendant").  Following these well-reasoned decisions, this Court finds that the Parish has a separate contract with each of the Defendants.  Thus, as recognized by the Parish, the

---

[24] *Id.*
[25] *Id.* at 10.
[26] *Id.*
[27] Notably, the *City of Kenner I* case involved the same attorneys and virtually the same insurance company defendants as does this case.  2022 WL 307295, at *1.

foreign defendants (Certain Underwriters and HDI), at least, can enforce the arbitration clause under the Convention.

The pertinent question now is whether the domestic insurers can also enforce the arbitration clause. Defendants argue that the Parish is equitably estopped from objecting to arbitration with the domestic insurers because its claims against all Defendants, foreign and domestic, are inextricably intertwined.[28] The Parish, on the other hand, argues that it would be unfair and in contravention of Louisiana law to apply the equitable estoppel doctrine.[29]

The Fifth Circuit has held that "equitable estoppel is warranted when [a] signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both nonsignator[ies] and one or more of the signatories to the contract." *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (quotation and emphasis omitted). "Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Id.* (quotation and emphasis omitted). Indeed, the Supreme Court has endorsed the application of domestic equitable estoppel doctrines to the Convention. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1645 (2020) ("nothing in the text of the Convention could be read to otherwise prohibit the application of domestic equitable estoppel doctrines" that permit the enforcement of arbitration agreements by nonsignatories).

Here, equitable estoppel applies to preclude the Parish from objecting to arbitration as to the domestic insurers because the Parish's claims against all Defendants are inextricably intertwined. *Grigson*, 210 F.3d at 527-28 (adopting the intertwined-claims test). Although the Parish filed a separate suit against each Defendant, the allegations in all the complaints are virtually

---

[28] R. Docs. 10-1 at 9-15; 17 at 3-8.
[29] R. Doc. 13 at 14-24.

identical (differing only in the named defendant insurer and its respective contract number).[30]  The Parish asserts claims related to one overarching surplus lines account and alleges that the Defendants used a common adjustor to evaluate the Parish's Hurricane Ida claims.[31]  In the eleven complaints, the Parish does not differentiate among the various insurers as to what each one did with respect to the claims adjustment process.[32]  By failing to differentiate between the wrongs of each Defendant, the Parish has alleged claims for substantially interdependent and concerted misconduct and, thus, is equitably estopped from objecting to arbitration of its claims against the domestic insurers.  *See City of Kenner II,* 2022 WL 16961130, at *3 (applying *Grigson* and *Holts v. TNT Cable Contractors, Inc.*, 2020 WL 1046337, at *4 (E.D. La. Mar. 4, 2020), to hold that equitable estoppel compels the arbitration of claims made "without differentiation among the insurer defendants" alleged to "have acted interdependently and in concert in the adjustment and evaluation of plaintiff's insurance claims"); *City of Kenner I*, 2022 WL 307295, at *3 (applying *Grigson* and *Holts* to hold that equitable estoppel was warranted to compel arbitration when the plaintiff alleged that defendants collectively insured the property and, without differentiation, received proof of loss but failed to pay out on the damage, thereby acting in bad faith); *Port Cargo*, 2018 WL 4042874, at *7 (applying *Grigson* to hold that equitable estoppel applied to compel arbitration when claims against foreign and domestic insurers were intertwined, since "[a]llowing plaintiffs to proceed in court against the domestic insurers while simultaneously proceeding in arbitration against the foreign insurers would render meaningless the arbitration clause and thwart the intentions of the Convention and the federal policy in favor of arbitration"); *see also Acad. of the Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London*, 2023 WL 246832,

---

[30] R. Doc. 1-2 at 1-60.
[31] *Id.*
[32] *Id.*

at *3-5 (E.D. La. Jan. 18, 2023) (discussing *Port Cargo*, *City of Kenner II*, and *Holts*, to reach the same result under similar facts); *Kronlage Family Ltd. P'ship v. Indep. Specialty Ins. Co.*, 2023 WL 246847, at *6 (E.D. La. Jan 18, 2023) (applying equitable estoppel to compel arbitration when plaintiff did not differentiate between conduct of foreign and domestic insurers).  As stated in *Grigson*, 210 F.3d at 528, "[t]he linchpin for equitable estoppel is equity – fairness.  For the case at hand, to not apply this intertwined-claims basis to compel arbitration would fly in the face of fairness."  The same rings true here.

In a last-ditch effort to avoid arbitration with the domestic insurers, the Parish argues the post-Ida cases applying equitable estoppel (specifically, *City of Kenner I* and *City of Kenner II*) do not confront the problem that Louisiana state law expressly prohibits the domestic insurers from enforcing the arbitration clause, which the Parish says it analyzes in this case.[33]  This argument is unavailing for two reasons.  First, post-Ida cases (including *City of Kenner II*) have indeed considered and rejected this same argument, finding that "Louisiana courts have likewise adopted *Grigson*'s holding," notwithstanding the supposed prohibition.  *Acad. of the Sacred Heart,* 2023 WL 246832, at *3 n.19 (quoting *City of Kenner II*'s holding to this effect and citing, by way of example, the state-law decision in *Sturdy Built Homes, L.L.C. v. Carl E. Woodward L.L.C.,* 82 So. 3d 473, 478 (La. App. 2011)).  Second, although La. R.S. 22:868(A)(2) generally prohibits insurance contracts from including arbitration clauses that deprive Louisiana courts of jurisdiction or venue over any action against an insurer, the statute does not apply to surplus lines insurance policies.  *Certain Underwriters at Lloyd's, London v. Belmont Commons L.L.C.*, 2023 WL 105337, at *3 (E.D. La. Jan 4, 2023) (citing La. R.S. 22:868(D) and :446(a) and applying equitable estoppel

---

[33] R. Doc. 13 at 14-24.

under *Grigson*).  Because this case involves surplus lines insurance, the statutory prohibition against arbitration does not apply.

Consequently, under the Convention and the equitable estoppel doctrine, an order compelling arbitration of this matter is appropriate, and section 3 of the FAA mandates that the Court "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  Accordingly, the Court compels arbitration, stays the case pending arbitration, and declines the Defendants' request to dismiss the Parish's claims at this time.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion to compel arbitration and stay litigation (R. Doc. 10) is GRANTED.

IT IS FURTHER ORDERED that this matter is STAYED and ADMINISTRATIVELY CLOSED while the parties pursue arbitration.  Any party may move to reopen these proceedings, if necessary, once arbitration is complete.

New Orleans, Louisiana, this 31st day of January, 2023.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE